1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8   BRENDAN DUNCKLEY,                          Case No.: 3:13-cv-00393-RCJ-CLB

9          Petitioner,                         **Order**

10  v.

11  ROBERT LeGRAND, et al.,

12         Respondents.

13

14         Brendan Dunckley, a Nevada prisoner, filed a petition for writ of habeas corpus under 28

15  U.S.C. § 2254. This Court denies Dunckley's habeas petition, denies him a certificate of

16  appealability, and directs the Clerk of the Court to enter judgment accordingly.

17  **I.     BACKGROUND**

18         Dunckley's convictions are the result of events that occurred in Washoe County, Nevada

19  between August 14, 1998 and August 13, 2000 and on March 10, 2007. ECF No. 18-8. At

20  Dunckley's preliminary hearing, Jessica H. testified that Dunckley, a man she did not recognize,

21  entered her apartment uninvited after she returned from a walk and demanded that she perform

22  oral sex on him. ECF No. 18-4 at 16-17. Jessica complied because Dunckley was blocking the

23  only exit from the apartment, but during the act, Jessica bit Dunckley's penis. *Id.* at 17, 20.

Dunckley then "hit [Jessica] upside [her] head so that [she] would stop" and ran out of the apartment. *Id.* at 21-22. Jessica followed Dunckley and successfully got other people to stop Dunckley from escaping. *Id.* at 22-23.

Detective Tom Broome interviewed Dunckley after the incident, and Dunckley explained that "he was just trying to help" Jessica because "[h]e'd seen her staggering down the road." *Id.* at 97. According to Dunckley, he "[h]elp[ed] her up the stairs into her apartment," and when "she had passed out and had fallen down," he "render[ed] medical assistance to her." *Id.* at 98. After Jessica woke up, she chased him and accused him of raping her. *Id.* at 99. Dunckley later changed his story, claiming that Jessica "forcibly put [her hand] down his pants." *Id.* at 103. When Dunckley was reminded that law enforcement had taken a saliva sample of his penis, Dunckley changed his story again, claiming that "when [Jessica] woke up[,] she unzipped his pants, took his penis out, [and] put it in her mouth before he knew what was happening." *Id.*

In addition to Jessica, two other victims testified at Dunckley's preliminary hearing: Michelle A. and Ashley V. Michelle testified that she met Dunckley and his girlfriend, Morgan, who were approximately seven to ten years older than her, in 2000 when she was thirteen years old. *Id.* at 46-50. At one point, after Michelle turned fourteen years old, she was lying in bed with Dunckley and Morgan, and after Morgan fell asleep, Michelle and Dunckley "kind of started fooling around or whatever." *Id.* at 51-52. Specifically, Dunkley touched Michelle's "vaginal area" with his hand. *Id.* at 57-58.

Similarly, Ashley testified that she met Dunkley in 1998 when she was twelve years old. *Id.* at 63. Ashley explained that Dunckley "put[] his hand down the front of [her] pants" and "fondled or rubbed" her "vaginal area" in an elevator at the Atlantis Casino Resort. *Id.* at 69-74. Later, before Dunckley dropped Ashley off at her parents' residence following her overnight stay

at his residence, Dunckley and Ashely had sexual intercourse in the backseat of his Ford Taurus. *Id.* at 68.

Following a guilty plea, Dunkley was found guilty of lewdness with a child under the age of fourteen years and attempted sexual assault. ECF No. 19-1. Dunckley was sentenced to life with the possibility of parole after a minimum of ten years for the lewdness conviction and 24 to 120 months for the attempted sexual assault conviction. *Id.* Dunkley appealed, and the Nevada Supreme Court affirmed on May 8, 2009. ECF No. 19-20. Remittitur issued on June 2, 2009. ECF No. 19-22.

Dunckley pursued three different collateral attacks upon his judgment of conviction. First, Dunckley moved for modification of his sentence on July 8, 2009. ECF No. 20-1. The state district court denied the motion on February 10, 2010. ECF No. 20-22. Dunckley appealed, and the Nevada Supreme Court affirmed on September 9, 2010. ECF No. 21-24. Remittitur issued on October 5, 2010. ECF No. 22-2.

Second, Dunckley filed a pro se state habeas petition and a counseled, supplemental petition on July 21, 2009, and March 23, 2010, respectively. ECF No. 20-4. The state district court denied the petition on December 29, 2011. ECF No. 23-4. Dunckley appealed, and the Nevada Supreme Court affirmed on January 16, 2013. ECF No. 24-19. Remittitur issued on February 11, 2013. ECF No. 24-23.

And third, on March 3, 2010, Dunckley moved to withdraw his guilty plea. ECF No. 21-4. The state district court denied the motion on December 29, 2011. ECF No. 23-3. Dunckley appealed, and the Nevada Supreme Court affirmed on January 16, 2013. ECF No. 24-18. Remittitur issued on February 11, 2013. ECF No. 24-22.

Dunckley's federal habeas petition was filed on August 26, 2014. ECF No. 9. The Respondents moved to dismiss Dunckley's petition on November 7, 2014. ECF No. 17. This Court granted the motion in part. ECF No. 31. Specifically, this Court determined that Grounds 1(a), 1(b), 1(d), 1(e), 2, and 3 were unexhausted. *Id.* at 5. In response, Dunckley moved for a stay and abeyance to exhaust his unexhausted claims. ECF No. 32. This Court granted Dunckley's motion and ordered that this action be administratively closed. ECF No. 35.

Dunckley filed a pro se second state habeas petition on November 7, 2016. ECF No. 47-1. The state district court denied the petition on June 29, 2017. ECF No. 47-23. Dunckley appealed, and the Nevada Supreme Court affirmed on April 11, 2018. ECF No. 47-31. Remittitur issued on May 8, 2018. ECF No. 47-32.

Dunckley moved to reopen this federal action on May 15, 2018. ECF No. 42. This Court granted the motion. ECF No. 44. The Respondents then again moved to dismiss Dunckley's petition. ECF No. 46. This Court granted the motion, dismissing Grounds 1(a), 1(b), 1(d), 1(e), 2, and 3 as procedurally defaulted. ECF No. 54.

In his sole-remaining ground for relief, Ground 1(c), Dunckley alleges that his federal constitutional rights were violated when his trial counsel failed to conduct any investigation and failed to develop a defense strategy. ECF No. 9 at 15. The Respondents answered this claim on June 10, 2019. ECF No. 58. Dunckley replied on July 8, 2019. ECF No. 60.

## II.    STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

4

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)

(describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III.   DISCUSSION

In Dunckley's sole-remaining ground for relief, Ground 1(c), he alleges that his federal constitutional rights were violated when his trial counsel failed to conduct an investigation, including interviewing witnesses, and to develop a defense strategy, thereby demonstrating that his trial counsel did not intend on taking his case to trial. ECF No. 9 at 15. Dunckley elaborates that his trial counsel should have interviewed Michelle, interviewed Ashley, looked into Ashley's school records and residence, looked into the plausibility of Ashley's accusation regarding his alleged conduct at the Atlantis Casino Resort, contacted the management at Jessica's apartment complex, interviewed Jessica, interviewed witnesses and the responding officer from the scene at Jessica's apartment complex, looked into Detective Broome's photographic lineups and probable cause declaration, interviewed Detective Broome, interviewed his wife, contacted his former culinary school to confirm his alleged alibi, and interviewed his parents and first wife. ECF No. 60 at 21-22. Dunckley contends that if his trial counsel had investigated these issues, "he would have been insistent on going to trial and [would] not have entered a plea agreement." *Id.* at 22.

In its order affirming the state district court's denial of Dunckley's state habeas petition, the Nevada Supreme Court held:

> Dunckley argues that the district court erred by denying his claim that counsel was ineffective for failing to fully investigate his case, including interviewing the sexual assault victims. We disagree. The district court concluded that Dunckley had not presented any evidence that the victims would have spoken to counsel or what, if anything they would have said that would have made Dunckley to [sic] insist on going to trial rather than pleading guilty. In addition, Dunckley did not demonstrate

what an investigation would have revealed. Thus, Dunckley failed to establish that counsel's performance fell below objective standards of reasonableness and that he would have otherwise not pleaded guilty.

ECF No. 24-19 at 3-4. This ruling was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult.

*See Harrington*, 562 U.S. at 104–05. In *Harrington*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Dunckley cites to a letter written by his trial counsel dated January 2, 2008 as proof that his trial counsel never intended on going to trial. *See* ECF No. 9 at 16. In that letter, Dunckley's trial counsel requested that Dunckley provide information regarding the dates he had a Ford Taurus, provide information showing when he lived in New York and California, and review the preliminary hearing transcripts for anything that could assist in his defense. *Id.* at 147. Dunckley's trial counsel then explained that he would "contact the District Attorney and open up informal discussion[s] regarding a plea deal in th[e] case" and would notify Dunckley "[i]f the District Attorney makes an offer." *Id.*

Consistent with his petition, Dunckley testified at the post-conviction evidentiary hearing that "had [his trial] attorney done any investigation" and had he "known the evidence" he knew at the time of his state habeas proceedings, he "would have been more than confident to go to trial" and would not have pleaded guilty. ECF No. 23-2 at 60-61. Dunckley also contended that while he gave his trial counsel some documentation establishing a possible alibi for the allegations raised by Ashley, he would not have pleaded guilty had he known about his trial

counsel's lack of an investigation or strategy. *Id.* at 27, 65. When asked why he entered a guilty plea, Dunckley explained that "it was [his trial] counsel's advice that because of the environment with the community, that I would be [in his] best interest to take th[e] deal as opposed to going to trial." *Id.* at 38.

Contrary to Dunckley's contentions, Dunckley's trial counsel testified at the post-conviction evidentiary hearing that he "conducted a pretty thorough and complete investigation of the case, including discovery and conversations with [Dunckley], and [he] concluded this case should go to trial." ECF No. 23-2 at 74. Indeed, Dunckley's trial counsel advised Dunckley to not accept a plea deal and instead to proceed to trial. *Id.* at 73. Dunckley went against his trial counsel's advise "because he believed that there was no chance that [the state district court] would not give him probation" due, in part, to "many hundreds of letters [that] would be coming in as to his credibility in th[e] community." *Id.* at 73. Importantly, Dunckley's trial counsel explained that "[i]t was almost immediately when [Dunckley's trial counsel] gave him the offer that there was probation on the table that he was going to accept it." *Id.* at 74.

Regarding his investigation, in addition to reviewing the discovery, Dunckley's trial counsel indicated that he investigated the Atlantis Casino Resort to see when the glass elevators were added, he was in the process of obtaining a diagram of Jessica's apartment when the plea took place, and he drove around Jessica's apartment complex and observed the outside area. *Id.* at 83, 85, 102. Dunckley's trial counsel also requested to meet with Dunckley to be able to further investigate the case, but Dunckley always "found a way to not meet with [his trial counsel] until very shortly before any hearing." *Id.* at 71. Moreover, Dunckley refused to let his trial counsel speak to his wife, a potential alibi witness, and was noncompliant in getting requested documents to his trial counsel. *Id.* at 76, 85, 91. Lastly, Dunckley's trial counsel did

1   not interview the victims because they had testified thoroughly at the preliminary hearing. *Id.* at

2   96.

3        Defense counsel has a "duty to make reasonable investigations or to make a reasonable

4   decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. And

5   "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed

6   for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's

7   judgments." *Id.* This investigatory duty includes investigating the defendant's "most important

8   defense" (*Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994)), and investigating and

9   introducing evidence that demonstrates factual innocence or evidence that raises sufficient doubt

10  about the defendant's innocence. *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999).

11       The Nevada Supreme Court reasonably concluded that Dunckley failed to establish that

12  his trial counsel acted deficiently in investigating his case. *Strickland*, 466 U.S. at 688. First,

13  Dunckley's trial counsel reasonably did not interview Michelle, Ashley, Jessica, or Detective

14  Broome because they testified thoroughly at the preliminary hearing. *See Eggleston v. United*

15  *States*, 798 F.2d 374, 376 (9th Cir. 1986) ("A claim of failure to interview a witness . . . cannot

16  establish ineffective assistance when the person's account is otherwise fairly known to defense

17  counsel."). Second, Dunckley's trial counsel testified that he conducted investigations into the

18  Atlantis Casino Resort and into Jessica's apartment's layout. ECF No. 23-2 at 83, 85, 102. Third,

19  Dunckley refused to let his trial counsel interview his wife. *Id.* at 76. Fourth, Dunckley fails to

20  adequately articulate why his trial counsel should have interviewed his parents, his first wife, or

21  his former school. *See Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995) ("[T]he duty

22  to investigate and prepare a defense is not limitless: it does not necessarily require that every

23  conceivable witness be interviewed." (internal citation and quotation omitted)). Finally, the

January 2, 2008 letter cited by Dunckley does not support his contention that his trial counsel simply wanted to avoid going to trial, thereby neglected his duty to investigate. Contrarily, Dunckley's trial counsel requested that Dunckley provide documents to be used in his defense and explained that he was merely opening discussions about a plea deal. *See* ECF No. 9 at 147. This conclusion that Dunckley's trial counsel did not neglect his duty to investigate by seeking a plea deal is supported by Dunckley's trial counsel's testimony that he advised Dunckley that going to trial was the best option. *See* ECF No. 23-2 at 73. Therefore, based on the foregoing, it cannot be concluded that Dunckley's trial counsel failed to fulfill his duty of conducting reasonable investigations. *Strickland*, 466 U.S. at 691.

However, even if his trial counsel was deficient for potentially failing to investigate the other issues Dunckley notes in his petition—Ashley's school records, the witnesses and responding officer from the scene at Jessica's apartment complex, and Detective Broome's lineups and probable cause declaration—the Nevada Supreme Court also reasonably concluded that Dunckley failed to demonstrate that he would not have pleaded guilty but for his trial counsel's errors. *Hill*, 474 U.S. at 59. Beyond his self-serving statements during the post-conviction evidentiary hearing and in his petition, the record is devoid of evidence that Dunckley would have insisted on going to trial even if his trial counsel had conducted further investigations. In fact, at his sentencing hearing, Dunckley stated that he "took the deal as opposed to going to trial because [he] wanted to prevent any further harm to the victims" and to his family. ECF No. 19 at 25-26. And, as explained previously, Dunckley's trial counsel testified that Dunckley took the plea deal as soon as probation was a sentencing option because he believed—against the advice of his trial counsel—that the state district court would not send him to prison. *See* ECF No. 23-2 at 73-74. Accordingly, it is not apparent that Dunckley took the plea

deal due to his lack of confidence in the evidence due to his trial counsel's failure to reasonably investigate the case; rather, it appears that Dunckley pleaded guilty to spare the victims having to testify at his trial and to capitalize on the possibility of getting probation. Because the Nevada Supreme Court reasonably denied Dunckley's ineffective-assistance-of-trial-counsel claim, Dunckley is denied federal habeas relief for Ground 1(c).

Following the filing of his reply, Dunckley moved "to introduce crutial [sic] supporting evidence" and moved for a speedy adjudication of his petition. *See* ECF Nos. 61, 62. In the former motion, Dunckley asks his Court to consider documents generated by the Reno Police Department after May 7, 2020, showing that there was never a police report generated regarding Ashley's allegations. ECF No. 61 at 2, 6-7. Because the documents that Dunckley desires this Court to consider were not a part of the record before the Nevada Supreme Court at the time it affirmed the denial of his state habeas petition, this Court is precluded from considering them and thereby finds good cause to deny Dunckley's motion.[1] *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of §2254(d)(1) on the record that was before that state court.").

## IV.   CERTIFICATE OF APPEALABILITY

This is a final order adverse to Dunckley. Rule 11 of the Rules Governing Section 2254 Cases requires this Court issue or deny a certificate of appealability (COA). As such, this Court has *sua sponte* evaluated the sole-remaining claim within the petition for suitability for the

---

[1] Dunckley contends that the documents generated by the Reno Police Department are not new evidence because they were alluded to during the post-conviction evidentiary hearing. ECF No. 65 at 2. This argument is unconvincing. Dunckley's trial counsel's question asking if a police report regarding Ashley's allegations was included in discovery and the corresponding negative response are not the same as a document generated by the Reno Police Department.

1  issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir.

2  2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made

3  a substantial showing of the denial of a constitutional right." With respect to claims rejected on

4  the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's

5  assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473,

6  484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a

7  COA will issue only if reasonable jurists could debate (1) whether the petition states a valid

8  claim of the denial of a constitutional right and (2) whether the court's procedural ruling was

9  correct. *Id*. Applying these standards, this Court finds that a certificate of appealability is

10  unwarranted.

11  **V.     CONCLUSION**

12          IT IS THEREFORE ORDERED that the Petition for a Writ of Habeas Corpus Pursuant

13  to 28 U.S.C. § 2254 by a Person in State Custody (ECF No. 9) is DENIED.

14          IT IS FURTHER ORDERED that Petitioner is denied a certificate of appealability.

15          IT IS FURTHER ORDERED that the Motion to Introduce Crutial [sic] Supporting

16  Evidence (ECF No. 61) is DENIED.

17          IT IS FURTHER ORDERED that the Motion for a Speedy Adjudication (ECF No. 62) is

18  DENIED as moot.

19          IT IS FURTHER ORDERED that the Clerk of the Court is directed to enter judgment

20  accordingly.

21          Dated:  September 22, 2020.

22

23          ROBERT C. JONES
            UNITED STATES DISTRICT JUDGE